UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :    10 Civ. 6528 (DLC)
                                        :    10 Civ. 7208 (DLC)
                                        :
IN RE: BOSTON GENERATING, LLC, et al.   :      10 Bankr. 14419
                                        :           (SCC)
                                        :
                                        :    OPINION AND ORDER
                                        :
----------------------------------------X
Appearances:

For Algonquin Gas Transmission, LLC:
Bennett G. Young
Paul S. Jasper
Dewey & LeBoeuf LLP
One Embarcadero Center, Suite 400
San Francisco, CA 94111

For the Debtors and Debtors-in-Possession:
D.J. Baker
Robert J. Rosenberg
James E. Brandt
Adrienne K. Eason Wheatley
Caroline A. Reckler
Kimberly A. Posin
Latham & Watkins LLP
885 Third Avenue
New York, NY 10022

DENISE COTE, District Judge:

     Algonquin Gas Transmission, LLC ("Algonquin"), a

counterparty to a contract for the transportation of natural gas

with the one of the debtors in a Chapter 11 bankruptcy action

currently proceeding in bankruptcy court in this jurisdiction,[1]

---

[1] The debtors are Boston Generating, LLC; EBG Holdings LLC; Fore
River Development, LLC ("Fore River"); Mystic I, LLC; Mystic
Development, LLC; BG New England Power Services, Inc.; and BG

has moved to withdraw the reference to the bankruptcy court with respect to two motions pursuant to 28 U.S.C. § 157(d).  For the following reasons, the motion to withdraw the reference with respect to the Rejection Motion, defined below, is granted.  The motion to withdraw the reference with respect to the Sale Motion, defined below, is denied.

BACKGROUND

A. The HubLine Service Agreement

Fore River, one of the Debtors, owns a power plant in Massachusetts ("the Fore River Plant"), which burns natural gas to generate electric power.  In 1999, Algonquin entered an agreement with Sithe Power Marketing, L.P. ("SPM") to construct a natural gas pipeline to serve the Fore River Plant.  At the same time, Algonquin and SPM entered into a service agreement pursuant to which SPM paid Algonquin for the transportation of natural gas over the pipeline to the Fore River Plant.  In 2000, Algonquin and SPM entered into additional agreements to build an expansion of the pipeline and to transport natural gas over the expanded pipeline.

---

Boston Services, LLC (collectively, "Debtors").  The bankruptcy is proceeding under docket number 10 Bankr. 14419 (SCC).

On January 31, 2001, Algonquin, SPM, and Fore River[2] entered
into an agreement pursuant to which SPM assigned its rights and
duties under its prior agreements with Algonquin to Fore River.
At the same time, Algonquin, Fore River, and SPM entered into
the HubLine Service Agreement ("HSA"), which superseded the
previous service agreements between Algonquin and SPM.  It is
the HSA, and the Debtors' efforts to reject the HSA, which are
at the heart of these motions to withdraw the reference to the
Bankruptcy Court.

Pursuant to the HSA, Algonquin agreed to reserve capacity
in its pipeline and to provide transportation service for
natural gas for the Fore River Plant on a "firm basis" for a
term of twenty years.  Algonquin does not supply Fore River with
any natural gas under the HSA; the HSA only provides Fore River
with priority use of the transportation capacity of the pipeline
from two points of origin on the pipeline to the Fore River
Plant and sets the rates for using that capacity to transport
gas through the pipeline.

The rates that Algonquin charges Fore River are contained
in a rate schedule that is subject to the regulatory authority
of the Federal Energy Regulatory Commission ("FERC").  FERC is
an independent agency that regulates the interstate transmission

---

[2] Fore River was at that time called Sithe Fore River
Development, LLC.

of electricity, natural gas, and oil.  The rate schedule that applies to the HSA was approved by FERC on November 7, 2003; and later modified and re-approved in February 2008.  Under the current terms of the contract, Fore River pays Algonquin a fixed monthly charge of approximately $719,000[3] to reserve the capacity within Algonquin's pipeline and a variable charge based on its usage of the reserved capacity.

B. Transporting Natural Gas to the Fore River Plant

The Fore River Plant went into service in August 2003.  The only means by which the Fore River Plant obtains natural gas is through Algonquin's pipelines; there are no other pipelines that deliver natural gas to the Plant.  Although the Debtors originally planned to use both natural gas and low-sulfur diesel fuel to generate power at the Plant, the ability to operate the Plant with diesel fuel was never perfected, and only natural gas has been used to operate the Plant.

Based on FERC rules, transportation capacity on the Algonquin pipeline is available to competing companies called "shippers" on a non-discriminatory basis.  Thus, several shippers may, and do, transport gas using Algonquin's pipelines. Under the HSA, the Fore River Plant has highest priority access to capacity on Algonquin's pipeline for transportation of

---

[3] The Debtors report the monthly fee to be approximately $718,000.

volumes of natural gas up to 140,000 dekatherms (Dth) per day. The HSA also makes assurances regarding the pressure of the natural gas that it delivers to Fore River.  But when Fore River purchases natural gas from its suppliers, it can arrange to use either the transportation capacity made available to it in the HSA, or it can use transportation capacity available from any shipper.  Fore River prefers to purchase transportation capacity from shippers where it can do so most cheaply.  It has also found that the two receipt points specified in the HSA are less reliable than the supply from other points on the pipeline. Between the beginning of 2008 and August 2010, 76% of the gas that Fore River purchased was bought without using the transportation capacity guaranteed to it by the HSA.

C. Procedural History

1. Bankruptcy Proceedings

The Debtors filed for bankruptcy pursuant to Chapter 11 on August 18, 2010.  On August 19, the Debtors filed a motion in the Bankruptcy Court requesting the court's approval and authorization of several procedures, the result of which would be to allow them to sell substantially all of their assets to an identified stalking horse bidder, including the Fore River Plant, free and clear of all claims, liens, or encumbrances

pursuant to 11 U.S.C. § 363 ("the Sale Motion").[4]  The Sale Motion also identifies several contracts that the bankruptcy estate is seeking to "assume," i.e., to continue to perform. The HSA was not listed among the contracts to be assumed.

On August 27, the Debtors filed a motion in the bankruptcy court asking the bankruptcy court to authorize them to reject the HSA pursuant to 11 U.S.C. § 365(a) ("the Rejection Motion").[5] The legal effect of rejection is discussed below, but the gist is that the Debtors are asking the bankruptcy court to allow them to cease performing under the HSA.  In the Rejection Motion, the Debtors explain that

> Considering the significant monthly costs associated with maintaining the Service Agreement, the Debtors have determined, in the exercise of their sound business judgment, that continuation of the [HSA] is not in the best interests of the Debtors' estates or their creditors and that the [HSA] should therefore be rejected.  Simply put, the Service Agreement provides no continuing benefit to the Debtors' estates.

The bankruptcy court has not yet decided either motion.

2. FERC Proceedings

On August 18, the same day that the Debtors filed for bankruptcy, the Debtors and the identified stalking horse bidder

---

[4] The Sale Motion is Document No. 24 in the bankruptcy action, 10 Bankr. 14419 (SCC).

[5] The Rejection Motion is Document No. 75 in the bankruptcy action.

jointly filed an application with FERC seeking its approval pursuant to § 203 of the Federal Power Act ("FPA"), 16 U.S.C. § 824(b), to sell the Fore River Plant to the bidder ("the FERC Application").  This regulatory approval is required for the sale of the Fore River Plant because FERC exercises jurisdiction over all facilities involved in the transmission or sale of electric energy in interstate commerce, of which the Fore River Plant is one.  16 U.S.C. §§ 824(b), 824b(a).

On September 8, Algonquin filed a protest to the FERC Application with FERC ("the Protest").  In the Protest, Algonquin argues, inter alia, that FERC should not approve the FERC Application without requiring the Debtors to assume the HSA.  The Debtors filed an answer to the Protest on September 23 urging FERC to approve the FERC Application notwithstanding the Protest.  The Debtors took the position that the proposed sale "does not involve the [HSA], and [FERC] approval of the [proposed sale] will not affect the [HSA]" and that conditioning approval of the sale on the Debtors assuming the HSA would "impermissibly interfere with the Debtors' rejection of the [HSA] pursuant to the Bankruptcy Code and with the Bankruptcy and District Courts' authority over Debtors' estates."

3. District Court Proceedings

On September 2, Algonquin filed a motion in the district court to withdraw the reference to the bankruptcy court pursuant

to 28 U.S.C. § 157(d) with respect to the Rejection Motion.[6]  The withdrawal motion was given the docket number 10 Civ. 6528, and the motion was fully briefed on September 24.  On September 17, Algonquin filed a motion to withdraw the reference with respect to the Sale Motion in this Court.[7]  The motion was given docket number 10 Civ. 7208, and was accepted as a case related to 10 Civ. 6528 on September 30.  The motion was fully briefed on October 15.

The parties agreed to postpone the bankruptcy court's hearing on the Rejection Motion until Algonquin's motion to withdraw the reference with respect to that motion is decided. A hearing on the Sale Motion is scheduled in the bankruptcy court for November 17.  The parties have not informed the Court of any schedule regarding the FERC Application.

---

[6] In addition to the HSA, the Rejection Motion seeks to reject one other executory contract.  Algonquin is moving to withdraw the reference only as to the HSA.

[7] Algonquin moves to withdraw the reference to the extent that the Sale Motion seeks an order approving and authorizing (a) the sale of substantially all of the Debtors' assets free and clear of claims, liens, liabilities, rights, interests and encumbrances and (b) the Debtors to enter into and perform their obligations under the asset purchase agreement.  In the alternative, Algonquin moves to withdraw the reference of the Sale Motion only to the extent the Sale Motion seeks such relief with respect to the Fore River Plant.  No other aspect of the Sale Motion, which seeks approval for several other procedures or actions, is challenged in the withdrawal motion.

DISCUSSION

A. Section 157 Standard for Withdrawal of the Reference

Pursuant to 28 U.S.C. § 157(a) and this District's Standing Order, all Chapter 11 cases are automatically referred to this District's bankruptcy judges.  A party can move to withdraw the reference to the Bankruptcy Court pursuant to 28 U.S.C. § 157(d), which states:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d) (emphasis supplied).  Mandatory withdrawal under § 157(d) is narrowly applied, and is appropriate only when "substantial and material potential conflicts exist between non-bankruptcy federal laws and Title 11."  In re Keene Corp., 182 B.R. 379, 382 (Bankr. S.D.N.Y. 1995) (citation omitted); see also In re Ionosphere Clubs, Inc., 922 F.2d 984, 995 (2d Cir. 1990).  Mandatory withdrawal is required when resolution of the matter calls for the bankruptcy judge to "engage in significant interpretation, as opposed to simple application," of federal non-bankruptcy statutes.  City of New York v. Exxon Corp., 932 F.2d 1020, 1026 (2d Cir. 1991).

9

B. The Rejection Motion

Algonquin argues that withdrawal of the Rejection Motion is mandatory because resolution of the motion requires consideration of the Natural Gas Act, 15 U.S.C. § 717 et seq. ("NGA"), in addition to Chapter 11. Algonquin is a "natural-gas company" as defined by the NGA. Id. § 717a(6). As such, it is subject to the jurisdiction of FERC, which is charged with implementing the NGA. Schneidewind v. ANR Pipeline Co., 485 U.S. 293, 295 (1988). The NGA is a "comprehensive scheme of federal regulation of all wholesales of natural gas in interstate commerce" that grants FERC "exclusive jurisdiction over the transportation and sale of natural gas in interstate commerce for resale." Id. at 300-01 (citation omitted).

The NGA requires that natural gas companies implement rates and charges that are "just and reasonable." 15 U.S.C. § 717c(a). Sellers and transporters of natural gas must file their rates and charges with FERC. Id. § 717c(c). Moreover, "no change shall be made by any natural-gas company in any such rate, charge, classification, or service, or in any rule, regulation, or contract relating thereto, except after thirty days' notice to the Commission and to the public." Id. § 717c(d). FERC is authorized to hold hearings to determine the lawfulness of any schedule of rates upon "complaint of any State, municipality, State commission, or gas distributing

10

company, or upon its own initiative without complaint." Id.
§ 717c(e); see also § 717*l*.  Because "the business of
transporting and selling natural gas for ultimate distribution
to the public is affected with a public interest," id. § 717(a),
the public interest guides FERC regulatory decisions under the
NGA.

The "filed rate doctrine" describes the relationship
between FERC's exclusive jurisdiction over natural gas
transportation contracts and the authority of the courts.  The
doctrine instructs that

> the right to a reasonable rate is the right
> to the rate which the Commission files or
> fixes, and, except for review of the
> Commission's orders, a court can assume no
> right to a different one on the ground that,
> in its opinion, it is the only or the more
> reasonable one.

Mississippi Power & Light Co. v. Mississippi ex rel. Moore, 487
U.S. 354, 371 (1988) (citation omitted).  Thus, "[t]he
reasonableness of rates and agreements regulated by FERC may not
be collaterally attacked in state or federal courts.  The only
appropriate forum for such a challenge is before the Commission
or a court reviewing the Commission's order." Id. at 375.  Once
filed with FERC, wholesale power contracts become the
"equivalent of a federal regulation." California ex rel.
Lockyer v. Dynegy, Inc., 375 F.3d 831, 839 (9th Cir. 2004)
(citation omitted).

11

"Though FERC has exclusive authority to modify filed rate wholesale energy contracts, its power to modify the rates is not limitless."  In re Calpine Corp., 337 B.R. 27, 32 (S.D.N.Y. 2006).

> FERC may not change a filed rate solely because the rate affords a public utility less than a fair return because the purpose of the power given to the Commission is the protection of the public interest, as distinguished from the private interests of the utilities.  Instead FERC can change a filed rate only when the rate is so low as to adversely affect the public interest -- as where it might impair the financial ability of the public utility to continue its service, cast upon other consumers an excessive burden, or be unduly discriminatory.

In re Mirant Corp., 378 F.3d 511, 518 (5th Cir. 2004) (citation omitted) (emphasis supplied); see also In re Permian Basin Area Rate Cases, 390 U.S. 747, 822 (1968).

The reference to the bankruptcy court with respect to the Rejection Motion must be withdrawn.  In order to decide the Rejection Motion, a court will have to decide whether Congress has, through the Bankruptcy Code, given the district court power to authorize the Debtors to reject the HSA, or if instead, doing so would run afoul of FERC's exclusive jurisdiction over filed rate contracts under the NGA.  Deciding this question requires more than a simple application of the NGA.

12

Two other courts have held that withdrawal of the reference was mandatory in situations materially indistinguishable from this one.  In re Mirant Corp., 378 F.3d at 517 n.2; In re Calpine Corp., 337 B.R. at 31.  In those two cases, the courts ultimately reached opposite conclusions regarding the power of the district court to authorize rejection of a filed rate contract, which is further proof that there is a potential for a substantial and material conflict between Chapter 11 and the NGA.

The Debtors' arguments that withdrawal is not mandatory are unpersuasive.  First, the Debtors argue that rejection of an executory contract is a "core proceeding" under the Bankruptcy Code that should remain in the Bankruptcy Court.  Whether or not a rejection motion is a core proceeding is irrelevant. "[M]atters within [the bankruptcy court's] 'core' jurisdiction . . . must be withdrawn under § 157(d) if they require the bankruptcy court to substantially interpret federal statutes which affect interstate commerce."  City of New York, 932 F.2d at 1026.

Second, the Debtors argue that rejection of the HSA is a routine breach of contract matter that has nothing to do with federal energy law.  Under the Bankruptcy Code,

> Rejection is in effect a decision to breach the contract or lease.  In the event of rejection, the non-debtor party is generally

13

> relegated to pursuing an unsecured
> prepetition claim against the estate.  Where
> assets of the estate are insufficient to pay
> unsecured creditors in full, the non-debtor
> party to a rejected executory contract, like
> other unsecured creditors of the estate, may
> receive only a fraction of the value of its
> claim.

In re Penn Traffic Co., 524 F.3d 373, 378 (2d Cir. 2008)

(citation omitted).  There is no binding precedent that applies

a bankruptcy court's authority to reject an executory contract

to a contract regulated by FERC under the NGA.  The Fifth

Circuit's decision in In re Mirant Corp. and the decision of the

Honorable Richard C. Casey of this District in In re Calpine

Corp., reach opposite conclusions on the issue in the similar

context of the FPA.  The court in In re Mirant held that the

ordinary understanding of rejection as a breach of contract

applied in the context of a filed rate contract, 378 F.3d at

519, whereas the court in In re Calpine disagreed.  337 B.R. at

36.  Whatever the conclusion should be on the merits of that

issue, the conflict itself is some evidence that more than

simple application of federal law is required here.

Finally, the Debtors' arguments regarding the position that

FERC has taken with respect to the scope of its own jurisdiction

in similar cases actually support withdrawing the reference.

The court that decides the Rejection Motion will have to

14

interpret FERC orders that at least one district court has
refused to follow.  See id. at 37 n.10.

C. The Sale Motion

In its motion to withdraw the reference with respect to the
Sale Motion, Algonquin makes two arguments for mandatory
withdrawal.  Algonquin has made these arguments both to this
Court through its briefing on the motion and to FERC through the
Protest it filed in the FERC Application.  In each forum,
Algonquin has argued, first, that the Sale Motion will involve
the same conflict between FERC's jurisdiction and the authority
of the courts as exists with the Rejection Motion.
Specifically, Algonquin argues that the Debtors are trying to
make an "end run" around the filed rate doctrine by filing the
Rejection Motion without seeking FERC approval under the NGA to
reject the HSA, and yet filing the FERC Application, which if
approved will have the effect of authorizing the Debtors to sell
the Fore River Plant without assuming the HSA.  Second,
Algonquin argues that there is a conflict between the bankruptcy
court's authority to approve the sale of the Fore River Plant
and FERC's public interest inquiry under the FPA.

Under the FPA, public utilities are prohibited from
selling, leasing, or disposing of their facilities "without
first having secured an order of the Commission authorizing it

15

to do so."  16 U.S.C. § 824b(a)(1).  FERC's authority to approve
a sale is set forth as follows:

> After notice and opportunity for hearing,
> the Commission shall approve the proposed
> disposition, consolidation, acquisition, or
> change in control, if it finds that the
> proposed transaction will be consistent with
> the public interest, and will not result in
> cross-subsidization of a non-utility
> associate company or the pledge or
> encumbrance of utility assets for the
> benefit of an associate company, unless the
> Commission determines that the cross-
> subsidization, pledge, or encumbrance will
> be consistent with the public interest.

Id. § 824b(a)(4) (emphasis supplied).

Of course, the bankruptcy court must separately authorize
the sale pursuant to 11 U.S.C. § 363, which allows a debtor,
"after notice and a hearing," to sell property of the estate
outside of the ordinary course of its business.  11 U.S.C.
§ 363(b)(1).  A court may approve a sale under § 363(b) if there
is a "good business reason" for it.  In re Lionel Corp., 722
F.2d 1063, 1071 (2d Cir. 1983).  "Section 363 permits sales of
assets free and clear of claims and interests.  It thus allows
purchasers . . . to acquire assets without any accompanying
liabilities."  In re Smart World Techs., LLC, 423 F.3d 166, 169
n.3 (2d Cir. 2005) (citing 11 U.S.C. § 363(f)).

Pursuant to the narrow application of 28 U.S.C. § 157 that
is followed in this Circuit, withdrawing the reference to the
bankruptcy court with respect to the Sale Motion is unnecessary.

Unlike the Rejection Motion, the Sale Motion does not create any jurisdictional conflict that requires either a substantial or material interpretation of federal non-bankruptcy law.

Pursuant to its authority under the FPA, FERC is already considering whether the sale of the Fore River Plant is permissible under the federal energy laws and in the public interest.  Algonquin has intervened in that proceeding and has made its case to the agency.  Similarly, the Bankruptcy Court will decide whether the sale shall proceed under the standards contained in the Bankruptcy Code.  This parallel approval structure guarantees that the considerations relevant to each forum's review of the Sale Motion will be fully addressed. Thus, even if FERC approves the sale, the Bankruptcy Court will still have to hold a hearing and determine whether to approve the sale.  Conversely, even if the Bankruptcy Court approves the sale pursuant to § 363, FERC will have to approve the sale under the FPA in order for it to go forward.

Due to this concurrent authority, the bankruptcy court will not have to engage in any significant interpretation of the FPA. Moreover, because of the dual approval process there is no substantial likelihood that resolution of the Sale Motion by the Bankruptcy Court will generate any substantial or material conflict with the FPA.  There are several examples of courts and FERC independently carrying out their parallel authority to

17

approve sales similar to this one.  See, e.g., Del Mar Asset
Management, L.P., 127 FERC ¶ 62,131 (May 14, 2009), 2009 WL
1339878, at *2 (FERC approving a sale motion pursuant to FPA
after the bankruptcy court approved the sale pursuant to § 363);
Southaven Power, LLC, 123 FERC ¶ 62,063 (Apr. 23, 2008), 2008 WL
1813408, at *1 (FERC approving a sale motion pursuant to FPA
while acknowledging the bankruptcy court would still have to
act).

     Algonquin argues that the same conflicts that justify
withdrawing the reference with respect to the Rejection Motion
should also justify withdrawing the reference of the Sale
Motion.  Although this is not an insubstantial argument, it is
ultimately not persuasive.  Because the Debtors have made dual
applications to the Bankruptcy Court and to FERC pursuant to the
FPA, there is no need to withdraw the reference regarding the
Sale Motion.  Conversely, because the Debtors have not applied
to FERC to exercise its power under the NGA to allow them to
reject the HSA, the existence of a material conflict between two
federal statutory regimes may exist and cannot be ignored.

     It bears noting that the appropriateness of any sale of the
Fore River Plant will turn on many factors, only one of which is
what contracts are being assumed and rejected.  The Debtors'
ability to reject the HSA will be separately determined in the
Rejection Motion, which is now before this Court.  FERC and the

18

Bankruptcy Court will determine whether it makes sense, considering the public interest within the context of the FERC proceeding, or as a matter of business judgment in the view of the Bankruptcy Court, to sell the plant.[8]

Algonquin's second argument is that a conflict between federal statutory regimes exists because FERC must consider the reliability of the energy supply in the region in which the Fore River Plant operates in deciding whether a sale is in the public interest. For the reasons already explained, this is irrelevant to whether withdrawal is mandatory. Algonquin simply has not identified any conflict between federal non-bankruptcy law and the Bankruptcy Code because the issue of the sale is pending before FERC and it is undisputed that FERC must make a public interest determination. Whether FERC takes into account Algonquin's argument regarding the importance of the HSA to the existence of a reliable energy supply is wholly within FERC's competence to decide.

---

[8] Algonquin speculates that FERC might approve the FERC Application without hearing or considering any of Algonquin's arguments regarding FERC's jurisdiction under the NGA over the HSA. This fear is not entirely unfounded since Algonquin lacks standing under the NGA to bring its own proceeding to oppose the Debtors' rejection of the HSA. See 15 U.S.C. § 717c(e), § 717l. This lack of standing explains why it has made its arguments regarding the HSA to FERC as FERC considers the sale of the power plant under the standards and procedures dictated by the FPA.

CONCLUSION

The September 2 motion to withdraw the reference in case 10 Civ. 6528, which relates to the Rejection Motion, is granted. The September 17 motion to withdraw the reference in case 10 Civ. 7208, which relates to the Sale Motion, is denied.  A separate scheduling order will permit the parties to address the merits of the Rejection Motion.

SO ORDERED:

Dated:    New York, New York
          November 1, 2010

_____
DENISE COTE
United States District Judge